UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE WARREN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-0784-B |
| | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION, A/K/A FANNIE MAE | § | |
| and RAY DONOVAN | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Stephanie Warren's Motion to Remand (doc. 5), filed on March 7, 2014. Defendant Federal National Mortgage Association (Fannie Mae) has filed a Response (doc. 8) to Plaintiff's Motion and Plaintiff has filed a Reply (doc. 12) to that Response. After considering the Motion and the related briefings, the Court **GRANTS** the Motion and **REMANDS** this case to the 116th District Court of Dallas County, Texas.

## I.

## BACKGROUND

This case arises from an employment dispute between Plaintiff Stephanie Warren (Warren) and Defendants Fannie Mae and Ray Donovan (Donovan). Doc. 5, Pl.'s Mot. Remand 2. Fannie Mae is a publicly traded company created by congressional charter under 12 U.S.C. § 1723a. *Id.* Donovan is a Fannie Mae employee accused of defaming Warren. *Id.* On January 30, 2014, Warren filed her first amended petition in the 116th Judicial District Court of Dallas County, Texas, alleging discrimination on the basis of her race and gender in violation of the Texas Human Rights Act. *Id.*

Warren also asserts a defamation claim against both Fannie Mae and Donovan. *Id.* On March 3, 2014, Fannie Mae filed a notice of removal, contending that pursuant to its charter under 12 U.S.C. § 1723a, this Court has original jurisdiction over the case. Doc. 1, Def.'s Not. Removal at ¶ 8.[1]

## II.

## LEGAL STANDARD

A defendant may remove a state court action to federal district court if the district court has original jurisdiction over the case and Congress has not expressly prohibited removal. 28 U.S.C. § 1441(a). The removing party has the burden of proof on a motion to remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Removal jurisdiction is subject to strict scrutiny because it "deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). Any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

## III.

## ANALYSIS

The Federal National Mortgage Association Charter Act authorizes Fannie Mae to "sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). This form of charter language is known as a "sue and be sued" provision. Under its original 1934 charter, Fannie Mae's "sue and be sued" provision authorized it to "sue and

---

[1]Donovan has consented to Fannie Mae's removal. Doc. 1, Def.'s Not. Removal at ¶ 10.

be sued, complain and defend, in any court of law or equity, State or Federal." Pub. L. No. 73-479, § 310(c)(3), 48 Stat. 1246, 1253 (1934). In 1954, Congress added the phrase "of competent jurisdiction" to Fannie Mae's "sue and be sued" provision. Pub. L. No. 83-560, § 309(a), 68 Stat. 590, 620 (1954). Fannie Mae contends that, as presently amended, its charter's "sue and be sued" provision confers original jurisdiction upon federal courts. Doc. 8, Def.'s Resp. 2. In support of this proposition, Fannie Mae relies on (a) the Supreme Court's interpretation of a similar, though not identical, statute; (b) the legislative history of Fannie Mae's charter; and (c) authority within and outside of the Fifth Circuit. *Id.* at 1, 6–8. Specifically, Fannie Mae argues that under *American National Red Cross v. Solicitor General*, Section 1723a(a) must confer original jurisdiction "because [Section 1723a(a)] specifically mentions federal courts." 505 U.S. 247, 255 (1992); Doc. 8, Def.'s Resp. 2.

In response, Warren contends that (a) *Red Cross* is distinguishable; (b) because Section 1723a(a) is distinguishable, statutory meaning must be given to the phrase "of competent jurisdiction"; and (c) the decisions within and outside the Fifth Circuit upon which Fannie Mae relies are neither controlling nor persuasive. *See generally* doc. 12, Pl.'s Reply.  The Court will begin by analyzing the Supreme Court's decision in *Red Cross* to determine the extent of its applicability to the language in Fannie Mae's charter. The Court will then examine the legislative history and the statutory function of the phrase "of competent jurisdiction" as found in Section 1723a(a) in order to determine whether Fannie Mae's charter confers automatic federal jurisdiction or rather requires an independent ground for removal to federal courts.

A.    *The Applicability of Red Cross*

In *Red Cross*, the Supreme Court reviewed the "sue and be sued" provision found in the

congressional charter for the American Red Cross. 505 U.S. at 252–57. Its language is similar, but not identical to Fannie Mae's charter.[2] Originally, the American Red Cross's charter stated that it may "sue and be sued in courts of law and equity within the jurisdiction of the United States." *Red Cross*, 505 U.S. at 251; Act of Jan. 5, 1905, ch. 23, § 2, 33 Stat. 600. As part of an overall revision in 1947, Congress added the phrase "State or Federal" to the Red Cross's charter. Act of May 8, 1947, Pub. L. 80–47, § 3, 61 Stat. 80, 81. The charter as amended authorizes the Red Cross to "sue and be sued in courts of law and equity, *State or Federal*, within the jurisdiction of the United States." 36. U.S.C. § 300105(a)(5) (2000) (emphasis added). The addition of "State or Federal" was of utmost importance to the *Red Cross* court; its review of Supreme Court precedent dating back to 1809 "support[ed] the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction, if but only if, it specifically mentions the federal courts." *Red Cross*, 505 U.S. at 252–57 (discussing *D'Oench, Duhme, & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447 (1942); *Bankers Trust Co. v. Texas & Pacific R. Co.*, 241 U.S. 295 (1916); *Osborn v. Bank of U.S.*, 22 U.S. 738 (1824); *Bank of U.S. v. Deveaux*, 9 U.S. 61 (1809)).

The court in *Red Cross* further noted that its past decisions considering "sue and be sued" provisions should have "placed Congress on prospective notice of the language necessary and sufficient to confer jurisdiction." *Id*. at 252 (citing *Cannon v. University of Chicago*, 441 U.S. 677, 696–98 (1979); *United States v. Merriam*, 263 U.S. 179, 186 (1923)). The court pointed to the notice provided by *D'Oench*, which was decided five years prior to the amendment of the Red Cross charter

---

[2] *Compare* 36. U.S.C. § 300105(a)(5) (the Red Cross is authorized to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States") *with* 12 U.S.C § 1723a(a) (Fannie Mae is authorized to "sue and to be sued, and to complain and to defend, *in any court of competent jurisdiction*, State or Federal") (emphasis added).

and held that language authorizing the Federal Deposit Insurance Corporation to "sue or be sued in any court of law or equity, *State or Federal*" did confer federal jurisdiction. *Id*. at 254 (emphasis added); *D'Oench*, 315 U.S. at 455. Thus, the language in the "sue and be sued" provision of the Red Cross charter, which was "in all relevant respects identical to [the language in *D'Oench*] on which [the Supreme Court] based a holding of federal jurisdiction just five years before . . . suffice[d] to confer federal jurisdiction." 505 U.S. at 257.

Fannie Mae contends that the *Red Cross* rule stands for the proposition that "if a congressional charter's 'sue and be sued' provision specifically mentions federal courts, then the provision confers federal jurisdiction." Doc. 8, Def.'s Resp. 2. In support of this assertion, Fannie Mae turns to Justice Scalia's dissent in *Red Cross*:

> The Court today concludes that whenever a statute granting a federally chartered corporation the "power to sue and be sued" specifically mentions the federal courts (as opposed to merely embracing them within general language), the law will be deemed not only to confer on the corporation the capacity to bring and suffer suit (which is all that the words say), but also to confer on federal district courts *jurisdiction* over any and all controversies to which that corporation is a party.

*Red Cross*, 505 U.S. at 265 (Scalia, J., dissenting) (emphasis in original).

Fannie Mae's reliance on the dissenting opinion in *Red Cross* reveals the weakness of its position. Yet Fannie Mae cannot conceal the language of the court's holding in *Red Cross* by seeking refuge in the dissent's attempt at summarizing the majority's opinion. In fact, the majority in *Red Cross* held that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." 505 U.S. at 255. In so holding, the court established that "sue and be sued" provisions must be specific and explicit in their

grant of federal jurisdiction. *Id.* at 255–56. Thus, unambiguous provisions referring to federal courts may confer federal jurisdiction and are to be distinguished from ones broadly authorizing suits "in all courts of law and equity within the United States." *See id.* (distinguishing the language of the statute at issue in *Deveaux* from that found in the Red Cross charter).

The Court finds no opinion of the United States Court of Appeals for the Fifth Circuit applying *Red Cross* to the "sue and be sued" provision in Fannie Mae's charter. The United States Court of Appeals for the District of Columbia and several district courts across the country have addressed the issue and have reached conflicting interpretations of the *Red Cross* rule. In *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines*, the D.C. Circuit interpreted the applicability of *Red Cross* to Fannie Mae's charter by emphasizing the importance of the word "sufficient" in the ruling of the *Red Cross* court. 534 F.3d 779, 784 (D.C. Cir. 2008). The *Pirelli* court held that "express reference to federal courts in a federally chartered entity's sue-and-be-sued clause [is] 'necessary *and sufficient* to confer jurisdiction.'" *Id.* (citing *Red Cross*, 505 U.S. at 252) (emphasis in original). The court thus found that Section 1723a(a) of Fannie Mae's charter conferred federal jurisdiction because it "expressly refer[red] to the federal courts in a manner similar to the Red Cross statute." *Id.*

The *Pirelli* court acknowledged that Fannie Mae's charter includes language that the Red Cross charter does not, but supported its position by pointing to other districts courts that had similarly found Fannie Mae's charter to grant federal jurisdiction. *Id.* at 785 (citing *Grun v. Countrywide Home Loans, Inc*, No. 03-CA-0141XR, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004); *Connelly v. Fed. Nat'l Mortg. Ass'n*, 251 F. Supp. 2d 1071, 1073 (D. Conn. 2003); *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 891 F. Supp. 371, 372 (N.D. Tex. 1994), *aff'd*, 58 F.3d 636 (5th Cir.

1995); *Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917 (E.D. Pa. 1994). The cases relied on by *Pirelli* assume, without analysis, that Fannie Mae's charter confers federal jurisdiction. Following *Pirelli*, additional cases have briefly concluded that Section 1723a(a) confers federal jurisdiction without delving into the legislative history or examining the critical difference between the Fannie Mae and Red Cross charters. *See Mendoza v. Fed. Nat'l Mortg. Ass'n*, 469 Fed. App'x. 544, 545 (9th Cir. 2012) (summarily concluding that federal jurisdiction is proper under Section 1723a(a)); *Griffin v. Fed. Nat'l Mortg. Ass'n, Inc.*, No. 2:10-CV-00306-TJW-CE, 2010 WL 5535618, at *2–3 (E.D. Tex. Dec. 9, 2010), *report and recommendation adopted*, 2:10-CV-00306-TJW-CE, 2011 WL 42680 (E.D.Tex. Jan. 6, 2011) (adopting the reasoning in *Pirelli*).

In an incisive concurrence to *Pirelli*, Judge Brown rejected the applicability of *Red Cross* to Fannie Mae's "sue and be sued" provision and stated that "*Red Cross* stands for the unremarkable rule that mentioning federal courts is necessary, but not always sufficient, to confer jurisdiction." *Pirelli*, 534 F.3d at 795 (Brown, J., concurring). Judge Brown rejected the majority's interpretation of *Red Cross* as mandating federal jurisdiction simply due to a statute's reference to federal courts. *Id.* She argued that the majority's reading of the rule leads to an "implausible" result, in which a statute containing the word "federal" but whose substantive meaning denies federal courts jurisdiction would nonetheless confer federal jurisdiction merely by virtue of the presence of the word "federal." *Id.* She further explained that "when a sue-and-be-sued clause mentions federal courts, a court is *permitted* to interpret the clause as conferring jurisdiction, and it should do so only when the statutory text and amendment history support such a reading." *Id.* at 796 (emphasis in original).

In contrast to the decisions relied on by the majority in *Pirelli* as well as those adopting its reasoning, the decisions noting the limited relevance of *Red Cross* and rejecting an automatic grant

of federal jurisdiction in cases involving Fannie Mae provide extensive analysis of the precedent guiding the *Red Cross* court and present a comprehensive inquiry into the legislative history of the amendments to Fannie Mae's charter. *See Fed. Nat'l Mortg. Ass'n v. Davis*, 963 F. Supp. 2d 532, 538 (2013) (explaining that "the Supreme Court's use of 'may' instead of 'shall' or 'must' shows that *Red Cross* does not compel federal jurisdiction); *Rincon Del Sol, LLC v. Lloyd's of London*, 709 F. Supp. 2d 517, 524 (S.D. Tex. 2010) (finding that "*Red Cross* does not compel the conclusion that . . . Fannie Mae's charter necessarily mandates a federal forum"); *Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559, 562 (S.D. W. Va. 2007) (noting that the use of "may" creates the possibility of federal jurisdiction, but does not compel it).

Although overruled by the two judge majority in *Pirelli*, the court in *Federal National Mortgage Association v. Sealed* further stressed the limited applicability of *Red Cross* to the interpretation of Fannie Mae's charter:

> Here, unlike the provision at issue in *American National Red Cross*, Section 1723a(a) is *not* "in all relevant respects identical" to a "sue and be sued" provision previously construed by the Supreme Court, [ ], and there is accordingly no reason to impute to Congress a belief that, in enacting Fannie Mae's federal corporate charter, it had crafted 'language necessary and sufficient to confer jurisdiction' upon the federal courts.

457 F. Supp. 2d 41, 44 (D.D.C. 2006), *overruled by Pirelli*, 534 F.3d at 785 (D.C. Cir. 2008) (citing *Red Cross*, 505 U.S. at 252) (emphasis in original).

The Court agrees with Judge Brown's concurrence in *Pirelli* and with the numerous cases finding that *Red Cross* is of limited applicability to Fannie Mae's charter. It is clear that *Red Cross* does not foreclose the possibility that Section 1723a(a) *may* confer federal jurisdiction. However, it is equally clear that an express reference to federal courts does not *compel* federal jurisdiction. The

*Red Cross* rule states that a "charter's 'sue and be sued' provision *may* be read to confer federal court jurisdiction if, but only if, it specifically mentions federal courts." *Red Cross*, 505 U.S. at 255 (emphasis added). Because the *Red Cross* court selected the term "may" rather than "shall" or "must," it follows that the court foresaw circumstances in which Congress could draft a "sue and be sued" provision incorporating an express reference to federal courts without intending to independently grant federal jurisdiction. *Davis*, 963 F. Supp. 2d at 538; *Knuckles*, 481 F. Supp. 2d at 562; *Pirelli*, 534 F.3d at 796 (Brown, J., concurring).

The *Red Cross* court's assertion that the language in the Red Cross charter "suffices to confer federal jurisdiction" mistakenly leads Fannie Mae to conclude that referencing the federal courts automatically confers federal jurisdiction. *Red Cross*, 505 U.S. at 257; Doc. 8, Def.'s Resp. 2–3. The majority in *Pirelli* is similarly steered into such a misinterpretation of the *Red Cross* rule. *Pirelli*, 534 F.3d at 784. The discourse over what is simply "necessary" or what is "necessary and sufficient" is based on a technical interpretation of the language, but such analysis must nonetheless be carried out within the context of the overall provision and issue in question. Against the background of the discussion on the jurisdictional issue, a court's explanation that language is "sufficient" means that it requires no further action to achieve a certain purpose. For example, a statute authorizing an entity to "sue and be sued in federal court" is not required to explicitly clarify that "this provision confers federal jurisdiction." Consequently, the Supreme Court's explanation in *Red Cross* that it has "placed Congress on prospective notice of the language necessary and sufficient to confer jurisdiction" must not be read as prospectively *compelling* jurisdiction in all statutes that reference federal courts in any manner, but should rather be understood as explaining that inclusion of language previously held to grant federal jurisdiction will not require additional language to make the grant of jurisdiction

effective. 505 U.S. at 252; *see also Pirelli*, 534 F.3d at 796 (Brown, J., concurring). However, when Congress deliberately chooses to incorporate such additional language, the issue becomes not whether the language still includes the words that are "necessary and sufficient" to confer federal jurisdiction, but whether the additional words qualify or limit language that would otherwise have granted jurisdiction.

Because Congress chose to incorporate the phrase "of competent jurisdiction" in its 1954 amendment to the Fannie Mae charter, the charter is not identical to those discussed in *D'Oench* and *Red Cross*, but rather includes a qualification or limitation. Despite the Supreme Court's efforts at construing "sue and be sued" provisions and clarifying what constitutes "prospective notice of the language necessary and sufficient to confer jurisdiction," its decisions have not confronted the phrase "of competent jurisdiction" found in Fannie Mae's charter. *Red Cross*, 505 U.S. at 252. Thus, the Court is persuaded that the inclusion of "State or Federal" in Fannie Mae's charter does not compel federal jurisdiction. Having found *Red Cross* inapplicable to the interpretation of Section 1723a(a), the court turns to the legislative history of the inclusion of the phrase "of competent jurisdiction" to determine whether it requires a removing defendant to provide an independent basis for subject matter jurisdiction.

B.      *The Legislative History of 12 U.S.C. § 1723a(a)*

Fannie Mae insists that legislative history confirms Section 1723a(a)'s grant of federal jurisdiction without the need for an independent basis for jurisdiction. First, Fannie Mae argues that when the phrase "of competent jurisdiction" was added to Fannie Mae's charter in 1954, "Congress was aware the charter would continue to confer federal jurisdiction on the federal courts." Doc. 8, Def.'s Resp. 4. To support this notion, Fannie Mae points to the Third and Fourth Circuit decisions

examining the "sue and be sued" provision of 12 U.S.C. § 1702, which outlines the powers of the Secretary of Housing and Urban Development and contains the same "of competent jurisdiction" language as found in Fannie Mae's charter. *Id.* (citing *George H. Evans & Co. v. United States*, 169 F.2d 500, 502 (3d Cir. 1948); *Seven Oaks, Inc. v. Fed. Hous. Admin.*, 171 F.2d 947, 948 (4th Cir. 1948); *Ferguson v. Union Nat'l Bank*, 126 F.2d 753, 756 (4th Cir. 1942) (emphasis in original).[3] The courts in *George*, *Seven Oaks*, and *Ferguson* concluded that Section 1702 did confer federal jurisdiction, but they did so without delving into the meaning of the phrase "of competent jurisdiction" or otherwise acknowledging its importance. *See George*, 169 F.2d at 502 (adopting the reasoning in Ferguson without further discussing the issue of federal jurisdiction); *Seven Oaks, Inc.*, 171 F.2d at 948–49 (addressing the question of venue and assuming that the statute is unambiguous rather than discussing the issue of subject matter jurisdiction); *Ferguson*, 126 F.2d at 756–57 (finding that the Tucker Act did not limit federal jurisdiction under Section 1702).

Fannie Mae therefore contends that because Third and Fourth Circuit cases finding that Section 1702 confers federal jurisdiction existed at the time of the 1954 amendments to Fannie Mae's charter, Congress was effectively on notice that adding the phrase "of competent jurisdiction" would not compromise Fannie Mae's federal jurisdiction. Doc. 8, Def.'s Resp. 4.

In reply, Warren points to the Fifth Circuit's decision in *Industrial Indemnity, Inc. v. Landrieu*, which expressly rejected the *Ferguson* and *George* Courts' interpretation of the "sue and be sued" provision found in 12 U.S.C. § 1702. 615 F.2d 644, 647 (5th Cir. 1980). In *Landrieu*, the Fifth

---

[3] Section 1702 states "The Secretary shall . . . be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702 (1999).

Circuit acknowledged that "[t]here is some authority that Section 1702 is both a waiver of immunity and a grant of subject-matter jurisdiction to the federal district court." *Id.* (citing *George*, 169 F.2d 500; *Ferguson*, 126 F.2d 753). However, the Court determined that "such an approach confuses the waiver of sovereign immunity and a grant of subject matter jurisdiction," clarifying that Section 1702 "is plainly no more than a waiver of sovereign immunity and requires another statute to grant jurisdiction in order to make a court competent to hear a case against the Secretary otherwise authorized by Section 1702." *Id.* (citing *Marcus Garvey Square, Inc. v Winston Burnett Construction Co.*, 595 F.2d 1126, 1131 (9th Cir. 1979)).

Because *Landrieu* was decided in 1980, it does not offer insight as to whether Congress was on notice, at the time it amended Fannie Mae's charter, that the phrase "of competent jurisdiction" would limit the grant of federal jurisdiction. However, the decision demonstrates that the Fifth Circuit does not construe statutory language such as that found in 12 U.S.C. § 1702 as conferring jurisdiction upon federal courts.

Other decisions do, however, refute Fannie Mae's argument that Congress was aware of the effect the phrase "of competent jurisdiction" would have on federal jurisdiction. The court in *Davis* clarified why the analysis of the "of competent jurisdiction" language in Section 1702 is irrelevant to that of Section 1723a(a). 963 F. Supp. 2d at 540. In 1935, when Congress amended Section 1702 to include "of competent jurisdiction," there had been no Supreme Court precedent interpreting the significance of the phrase. *Id.* (citing Act. of Aug. 23, 1935, ch. 614, § 344(a), 49 Stat. 722 (codified as amended at 12 U.S.C. § 1702 (2006)). In its 1942 decision in *D'Oench*, the Supreme Court placed Congress on notice that a charter permitting an entity to sue and be sued "in any court of law or equity, State or Federal" would confer federal jurisdiction. 315 U.S. at 455–56. Because Section

1723a(a) of Fannie Mae's charter was amended twelve years after this decision, the circumstances under which Section 1702 and Section 1723a(a) were drafted differ and do not allow for a direct comparison of the provisions' statutory language. Therefore, the inferences that can be drawn with respect to the legislative intent shaping Section 1702 cannot be transferred to those guiding the 1954 amendment of Section 1723a(a). *See Davis*, 963 F. Supp. 2d at 540 ("It cannot be said that Congress's intent with respect to its use of the phrase remained the same in light of the intervening Supreme Court decision.").

Moreover, examining legislative history demonstrates that Congress knew its 1954 amendments to the Fannie Mae charter would create a "sue and be sued" provision clearly distinct from that examined in *Red Cross* and *D'Oench*. *Knuckles*, 481 F. Supp. 2d at 564; *Davis*, 963 F. Supp. 2d at 540. In *Red Cross*, the court explained that the holding in *D'Oench* had given Congress notice that a charter authorizing the Federal Deposit Insurance Corporation to sue and be sued "in any court of law or equity, State or Federal" would confer federal jurisdiction. *Red Cross*, 260 (discussing *D'Oench*, 315 U.S. at 455). Following the *D'Oench* decision in 1942, the Red Cross charter was amended to reflect the FDIC's "sue and be sued provision" at issue in *D'Oench*. *Id.* This, the *Red Cross* court explained, "indicates that Congress may well have relied on [*D'Oench*] to infer that amendment of the Red Cross Charter's 'sue and be sued' provision to make it identical to the FDIC's would suffice to confer federal jurisdiction." *Id.* Had Congress wished to ensure that Fannie Mae's charter would likewise confer automatic federal jurisdiction, it could have retained the charter's original language, which included the word "Federal," but did not require the court to be "of competent jurisdiction." In 1954, however, Congress deliberately chose to insert the phrase "of competent jurisdiction" into the Fannie Mae charter, thereby distinguishing it from the "sue and be

sued" provisions in the FDIC and Red Cross charters. Pub. L. No. 83-560, § 201, 68 Stat. 590, 620 (1954); *see also Davis*, 963 F. Supp. 2d at 540 ("if Congress had wanted to confer federal jurisdiction on [Fannie Mae], it would have simply used the same sue-and-be-sued provision for a third time. But it did not."); *Rincon*, 709 F. Supp. 2d at 524 ("because Congress chose to use substantially different language seven years later when amending the Fannie Mae charter . . . Congress intended for there not to be original federal jurisdiction, but rather intended for the federal forum to be available if that forum was "competent" to hear the case"); *Knuckles*,  481 F. Supp. 2d at 564.

Fannie Mae further argues that if Congress had wanted to qualify the grant of federal jurisdiction, it would have removed the word "Federal" from the "sue and be sued" provision, rather than amend it to include the phrase "of competent jurisdiction." Doc. 8, Def.'s Resp. 4. Here, Fannie Mae relies on the D.C. Circuit's decision in *Pirelli*, in which the court asserted that "[i]f Congress in 1954 did not want to continue to confer federal jurisdiction in Fannie Mae cases, it logically would have omitted the word "Federal" from the statute, not attempted a bank shot by adding the words 'of competent jurisdiction.'" *Pirelli*, 534 F.3d at 786.

The Court finds that *Pirelli*'s framing of the issue as a dichotomy in which federal jurisdiction is either granted or denied is unpersuasive. Moreover, by relying on this line of reasoning, Fannie Mae mischaracterizes Warren's position and fails to consider the possibility that Congress may have wished to limit federal jurisdiction without completely eliminating it. Fannie Mae mistakenly assumes that the "sue and be sued provision" can only either automatically confer or fully eliminate federal jurisdiction. Such is not the case. As Warren argues, and as numerous courts explain, the grant of federal jurisdiction can be qualified, meaning that jurisdiction is proper if an independent ground for removal exists, such as one provided by federal question and diversity statutes. 28 U.S.C. §§ 1331,

1332; *see Pirelli*, 534 F.3d at 797 (Brown, J., concurring) (noting that "the Supreme Court has repeatedly emphasized [that] the phrase 'of competent jurisdiction almost always refers to subject matter jurisdiction") (citing *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 546 U.S. 303, 316 (2006); *United States v. Morton*, 467 U.S. 822, 828 (1984); *Califano v. Sanders*, 430 U.S. 99, 106 n.6 (1977)); *Davis*, 963 F. Supp. 2d at 542 (explaining that "at most, the words ['of competent jurisdiction'] require both personal and subject matter jurisdiction," but refer to federal subject matter at the very least); *Kennedy v. Fed. Nat'l Mortg. Ass'n*, No. 4:13-CV-203-F, 2014 WL 3905593, at *5 (E.D.N.C. Aug. 11, 2014) (finding that "of competent jurisdiction" refers to subject matter jurisdiction); Doc. 12, Pl.'s Reply 6.

Warren directs the Court to *Davis* and *Rincon*, which both disputed *Pirelli*'s contention that by retaining the word "Federal" following the 1954 amendment to Fannie Mae's charter, Congress revealed its intention to ensure federal jurisdiction in all Fannie Mae cases. *Davis*, 963 F. Supp. 2d at 540; *Rincon*, 709 F. Supp. 2d at 524; Doc. 12, Pl.'s Reply 6. The court in *Rincon* first challenged *Pirelli*'s formulation of the jurisdictional issue as one in which Congress could have eliminated federal jurisdiction if it had so desired. *Rincon*, 709 F. Supp. 2d at 524. It noted that "elimination of federal jurisdiction could not reasonably be Congress's intent and cannot be fairly read" into the charter's construction. *Id.* (citing *Knuckles*, 481 F. Supp. 2d at 564). The court drew this conclusion from the fact that the Fannie Mae charter was amended seven years after the Supreme Court issued its decision in *Red Cross*, in which it held that federal jurisdiction could not be conferred without a specific and explicit reference to federal courts. *Id.*; 505 U.S. at 254–55 (finding that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts").

- 15 -

Therefore, Congress is assumed to have been on notice that maintaining the word "Federal" in the "sue and be sued" provision would leave the possibility for Fannie Mae to be a party to an action in federal court. Accordingly, Fannie Mae's argument that Congress could have eliminated the word "Federal" if it had wanted to limit federal jurisdiction fails; Congress would have been aware that doing so would fully preclude federal jurisdiction, and instead chose a more refined approach by inserting the words "of competent jurisdiction." Consequently, "the predication of federal jurisdiction upon some additional basis must have been the legislative concern when Congress included the 'of competent jurisdiction, State or Federal' language into the Fannie Mae charter." *Rincon*, 709 F. Supp. at 524.

C.      *The Statutory Function of the Phrase "Of Competent Jurisdiction"*

The inclusion of the phrase "of competent jurisdiction" distinguishes the "sue and be sued" provision of Fannie Mae's charter from that discussed in the Supreme Court's *Red Cross* decision.[4] This distinction being central to the issue of whether the charter confers automatic federal jurisdiction or rather requires an independent basis for such jurisdiction, the Court turns to the statutory function of the phrase "of competent jurisdiction," added to the "sue and be sued" provision during the 1954 amendments to Fannie Mae's charter.

Warren asserts that the added language "of competent jurisdiction" restricts federal jurisdiction to courts that derive their jurisdiction from other independent sources, thus granting the *capability* to sue and be sued in federal courts, but not automatically conferring jurisdiction upon

---

[4] Congress authorized the Red Cross "to sue and be sued in courts of law or equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C. § 300105(a)(5). In contrast, Fannie Mae's charter provides for it to "sue and be sued, and to complain and defend, *in any court of competent jurisdiction*, State or Federal." 12 U.S.C. § 1723a(a) (emphasis added).

federal courts. Doc. 5, Mot. to Rem. 6. Warren relies on *Knuckles*, in which the court compared the Red Cross charter to Fannie Mae's charter, concluding that "of competent jurisdiction" requires courts to have independent grounds for jurisdiction. 481 F. Supp. 2d at 563. The *Knuckles* court applied the tenet of statutory construction requiring that "each word in a statute . . . be given effect and linguistic superfluity avoided." *Id.* (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9 (2006). It thus concluded that the addition of the phrase "of competent jurisdiction" must have a meaning, and that such meaning could exist only if the phrase "differentiat[es] between state and federal courts that posses 'competent' jurisdiction, i.e., an independent basis for jurisdiction, from those that do not." *Id.* The court concluded that conferring automatic federal jurisdiction in all cases in which Fannie Mae is a party would "effectively eliminate the phrase 'of competent jurisdiction' from the charter." *Id.*

Warren further directs the Court to *Rincon*, in which a court in the Southern District of Texas adopted the reasoning in *Knuckles* and similarly concluded that the language "of competent jurisdiction" must serve the purpose of limiting federal jurisdiction to those cases possessing an independent source of jurisdiction. 709 F. Supp. 2d at 525 (citing *Knuckles*, 481 F. Supp. 2d at 563); Doc. 5, Mot. to Rem. 7. The *Rincon* court stressed the importance of the charter's provision for suits in "*any* court of competent jurisdiction, *State* or Federal." *Rincon*, 709 F. Supp. 2d at 524 (emphasis in original). The court thus indicated that allowing a case to be automatically removed to federal court simply because Fannie Mae is a party would "belie the plain language of the charter and effectively eliminate a Plaintiff's statutory right to bring suit against Fannie Mae in state court." *Id.*

In response to Warren's argument that "of competent jurisdiction" would be meaningless if it does not limit federal jurisdiction, Fannie Mae points to the D.C. Circuit's reasoning in *Pirelli*. 534

F.3d 779 (D.C. Cir. 2008); Doc. 8, Def.'s Resp. 5–6. To demonstrate that the phrase could have a purpose other than to qualify the grant of federal jurisdiction, the court in *Pirelli* articulated four possible meanings of the phrase "of competent jurisdiction." *Pirelli*, 534 F.3d at 785. The addition of the phrase "of competent jurisdiction," the D.C. Circuit explained, could clarify that:

> (i) litigants in state courts of limited jurisdiction must satisfy the appropriate jurisdictional requirements; (ii) litigants, whether in state or federal court, must establish that court's personal jurisdiction over the parties; (iii) litigants relying on the "sue and be sued" provision can sue in federal district courts but not necessarily in all federal courts; and (iv) where the Tucker Act might otherwise funnel cases to the Court of Federal Claims, the federal district courts still possess jurisdiction.

*Id.* (citations omitted).

In *Davis*, the Eastern District of Virginia scrutinized the *Pirelli* court's justifications for these possible meanings, dispelling each and concluding that "of competent jurisdiction" could serve no purpose other than to qualify the grant of federal jurisdiction. 963 F. Supp. 2d at 542–43. The *Davis* court undermined the first proposed meaning of the phrase—that litigants in state courts of limited jurisdiction must satisfy the jurisdictional requirements—by explaining that *Pirelli* relied on a statute that differed from Fannie Mae's charter. *Id.* at 542 (citing *Pirelli*, 534 F.3d at 785). The *Pirelli* court relied on *Osborn*, in which the Supreme Court interpreted a provision in the incorporation act of the Bank of the United States that allowed it "to sue and be sued . . . in all State Courts having competent jurisdiction, and in any Circuit Court of the United States." *Osborn v. Bank of U.S.*, 22 U.S. 738, 817 (1824). The *Davis* court noted that this section was "materially different" from Section 1723a(a) due to the distinct construction of the two provisions. *Davis*, 963 F. Supp. 2d at 542. The comma separating "in all State Courts having competent jurisdiction" from "and in any Circuit Court

of the United States," the *Davis* court explained, signaled that the first part of the phrase did not qualify the part that followed. *Id.* Moreover, the insertion of the word "and" between the two segments further demonstrates that they are independent of one another. Therefore, the "competent jurisdiction" phrase in the Bank's charter does not apply to "any Circuit Court of the United States" in the same way that the phrase "of competent jurisdiction" applies to "State or Federal" in Fannie Mae's charter. *Id.*

The *Davis* court then challenged *Pirelli*'s assertion that "of competent jurisdiction" could require parties to establish a court's personal jurisdiction over them. *Id.*; *Pirelli*, 534 F.3d at 785 (citing *Blackmar v. Guerre*, 342 U.S. 512, 516 (1952); *United States v. Morton*, 467 U.S. 822, 828 (1984)). As the *Davis* court explained, this argument misconstrues *Morton*'s holding, in which the Supreme Court interpreted the phrase "of competent jurisdiction" found in a garnishment statute. *Morton*, 467 U.S. at 828 (discussing 42 U.S.C. § 659). *Morton* acknowledged the possibility that such language could require personal jurisdiction but concluded that, reading the statute as a whole, the words could not refer to personal jurisdiction because they did not require the court to delve into the relationship among the defendant, the forum, and the particular controversy, as must be ascertained when determining personal jurisdiction. *Id.* at 828–29. Because Section 1723a(a) of Fannie Mae's charter does not discuss issues pertaining to a court's jurisdiction over the parties, its reference to "competent jurisdiction" similarly pertains to subject matter jurisdiction. *See Davis*, 963 F. Supp. 2d at 542 ("the Supreme Court never entertained the possibility of entirely detaching subject matter jurisdiction from the phrase's meaning"); *see also Pirelli*, 534 F.3d at 797 (Brown, J., concurring) (reviewing the meaning attributed to "competent jurisdiction" by the Supreme Court and leading commentators, and concluding that the phrase refers to subject matter jurisdiction).

The *Davis* court undermined the third justification presented in *Pirelli*—that litigants may sue in some, but not all federal courts—by pointing to the court's circular reasoning. *Davis*, 963 F. Supp. 2d at 542 (citing *Pirelli*, 534 F.3d at 785). *Davis* noted that "[t]he distinction between the various types of federal courts assumes that at least one such type has original jurisdiction under the statute." *Id.* However, for this logic to function, the statute must grant original federal jurisdiction to *at least some* courts, even if not to all. *Id.* The *Pirelli* court therefore attempted to advance its argument by relying on its final conclusion, thus undermining its reasoning. *Id.*

*Davis* rejected *Pirelli*'s last contention, that "of competent jurisdiction" could serve the purpose of granting federal jurisdiction to federal district courts where the Tucker Act might otherwise redirect cases to the Court of Federal Claims. *Davis*, 963 F. Supp. 2d at 542(citing *Pirelli*, 534 F.3d at 785). *Davis* argues that *Pirelli* is mistaken in relying on *Ferguson*, where the Fourth Circuit held that it had subject matter jurisdiction over a suit against the Federal Housing Administrator pursuant to 12 U.S.C. § 1702. *Id.*; 126 F.2d 753, 756–57 (4th Cir. 1942). In *Ferguson*, the Fourth Circuit explained that "[i]t could hardly have been intended by Congress that suits over $10,000 against the Administrator could be brought in any state court of general jurisdiction, but in the federal jurisdiction only in the Court of Claims." 126 F.2d at 756. The court in *Pirelli* incorrectly interpreted this as making the Tucker Act inapplicable because of the phrase "of competent jurisdiction." *Davis*, 963 F. Supp. 2d at 543. The court in *Ferguson* made no such finding, but rather explained that "the inapplicability of the Tucker Act was settled law" that did not implicate the language "of competent jurisdiction" found in Section 1702. *Id.* (citing *Ferguson*, 126 F.2d at 756–57 ("[A]s we read recent decisions of the Supreme Court the jurisdiction of a United States District Court to entertain a suit against governmental agencies and corporations is not

limited by the provisions of the Tucker Act.").

Having examined the justifications presented in *Pirelli* and the responses articulated in *Davis*, this Court is persuaded that "of competent jurisdiction" was not added to the Fannie Mae charter to serve the purposes envisioned by the *Pirelli* court. This does not render the phrase meaningless or superfluous, but rather gives it an important purpose—to ensure that actions involving Fannie Mae are brought in a court that has an independent source of jurisdiction and that does not derive jurisdiction solely from the fact that Fannie Mae's charter includes the word "Federal" in its "sue and be sued" provision.

The Court concludes that the holding of *Red Cross* does not extend to the analysis of Section 1723a(a) and does not dictate that federal courts have jurisdiction over all cases in which Fannie Mae is a party. The Court further finds that the legislative history and statutory construction of Section 1723a(a) establish that the phrase "of competent jurisdiction" has the distinct purpose of qualifying federal jurisdiction in cases involving Fannie Mae. The Court therefore holds that it lacks subject matter jurisdiction under Section 1723a(a) over the state law claims asserted in Warren's complaint. Accordingly, Plaintiff's Motion to Remand must be and is **GRANTED**.

D.     *Attorneys' Fees*

Plaintiff Warren urges the Court to award her attorneys' fees pursuant to 28 U.S.C. § 1477(c). Doc. 5, Pl.'s Mot. to Rem. 7–8. Under section 1447(c), "[a]n order remanding the case may require payment of costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, "[t]here is no automatic entitlement to an award of attorney[s'] fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). A court may exercise discretion in awarding attorneys' fees when removal is established to be improper. *Id.* In making this

determination, courts consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293. Although this case should not have been removed, the arguments presented by Fannie Mae were objectively reasonable. Consequently, the Court exercises its discretion to not award attorneys' fees in this case.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**. The Court **ORDERS** this case **REMANDED** to the 116th District Court of Dallas County, Texas.

SO ORDERED.

SIGNED: September 15, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE